**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:14-CV-256-RLV-DCK**

| | |
|---|---|
| DENNIS J. CRAIG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion for Judgment on the Pleadings" (Document No. 9) and Defendant's "Motion for Summary Judgment" (Document No. 11). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion for Judgment on the Pleadings" be denied; that Defendant's "Motion for Summary Judgment" be denied; and that the Commissioner's decision be vacated.

## I. BACKGROUND

Plaintiff Dennis J. Craig ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On September 4, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 alleging an inability to work due to a disabling condition beginning May 30, 2012. (Transcript of the Record of Proceedings ("Tr.") 14). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on September 25, 2012, and again after

reconsideration on January 4, 2013. (Tr. 14, 68-76, 96-103). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. We realize that your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 100).

Plaintiff filed a timely written request for a hearing on February 14, 2013. (Tr. 14, 104-105). On October 10, 2013, Plaintiff appeared and testified at a hearing before Administrative Law Judge John L. McFadyen ("ALJ"). (Tr. 14, 27-49). In addition, Charlie Edwards, a vocational expert ("VE"), and Anna Hamrick, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on February 14, 2014, denying Plaintiff's claim. (Tr. 11-22). Plaintiff filed a request for review of the ALJ's decision on February 24, 2014, which was denied by the Appeals Council on August 7, 2014. (Tr. 1-4, 10). The February 14, 2014, ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on September 30, 2014. (Document No. 1). On November 17, 2014, the undersigned was assigned to his case as the referral magistrate judge. Plaintiff's "Motion for Judgment on the Pleadings" (Document No. 9) and "Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings" (Document No. 10) were filed January 8, 2015; and Defendant's "Motion for Summary Judgment" (Document No. 11) and Defendant's "Memorandum in Support of the Commissioner's Decision" (Document No. 12) were filed March 11, 2015. Plaintiff's "Response

to Defendant's Memorandum in Support of Motion for Summary Judgment" (Document No. 13) was filed March 27, 2015.

On May 21, 2015, the Court issued an "Order" (Document No. 14) requiring the parties to confer and discuss any implications of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). In a "Joint Status Report" (Document No. 15) filed on May 28, 2015, the parties reported that they agreed that supplemental briefing was not required in this case.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner − so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between May 30, 2012, and the date of his decision.[1] (Tr. 14). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

> impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 21-22).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since May 30, 2012, his alleged disability onset date. (Tr. 16). At the second step, the ALJ found that osteoarthritis of the right ankle and obesity were severe impairments.[2] (Tr. 16). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 17).

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform the full range of light work.[3] (Tr. 17-21). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 17). The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 19).

At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work, which was semi-skilled vocationally and required heavy exertion, as a United Parcel Service ("UPS") driver. (Tr. 21). At the fifth and final step, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity" jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 21). However, the VE did not testify and the ALJ did not ask any question at the hearing regarding which occupations the claimant could actually perform. (Tr. 14-22, 47-48). Overall, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between May 30, 2012, and the date of his decision, February 14, 2014. (Tr. 21-22).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to consider non-mechanical application of the grids pursuant to 20 C.F.R. § 404.1563(b);

---

[3] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it **requires a good deal of walking or standing**, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (emphasis added).

6

(2) the ALJ improperly evaluated the treating specialist's opinion and the medical evidence regarding the functionally limiting effects of Plaintiff's ankle impairment; and (3) the ALJ erred by not considering the medical necessity of Plaintiff's "prescribed" cane in the RFC. (Document No. 10). The undersigned will discuss each of these contentions in turn.

A.  **Consideration of non-mechanical application of grids**

In his first assignment of error, Plaintiff argues that the ALJ failed to consider non-mechanical application of the grids pursuant to 20 C.F.R. § 404.1563(b). (Document No. 10, pp.4-6). Specifically, Plaintiff argues that age requirements set forth in the grids should not be applied strictly if a borderline situation exists. Id. at 4-5 (citing 20 C.F.R. § 404.1563(b)). If a claimant is within a few days to a few months of reaching an older age category, and the older age category would result in a determination of disability, then the ALJ is required to at least consider non-mechanical application in light of the overall factors of the case.[4] If the ALJ does not consider non-mechanical application of the grid in light of the overall factors, remand is appropriate. Id. at 5 (citing Ford v. Heckler, 572 F. Supp. 992, 994 (E.D.N.C. 1983)). Plaintiff argues that the ALJ did not consider a non-mechanical application of the grid despite the fact that Plaintiff was a little more than three months from turning 55 years old at the time of decision. Plaintiff concludes that because he was assigned an RFC for light work, had a high school education, and according to the vocational expert, lacked transferable skills, application of the 55-year-old grid would have resulted in a finding of disability. (Document No. 10, pp.5-6).

In response, Defendant argues that Plaintiff left out criteria for when the ALJ can consider higher age categories. (Document No. 12, pp.3-5) (citing Bush v. Astrue, 2008 WL 867941

---

[4] Plaintiff further notes that the SSA has found that borderline situations generally exist up to six months before attainment of the specified age. Id. (citing HALLEX II-5-302, II-5-302(A)).

7

(March 28, 2008 S.D. W.Va.)). Defendant asserts that Bush instructs that absent a showing of additional adversities—for example illiteracy or a history of unskilled work experience in an isolated industry—the ALJ must use the Plaintiff's chronological age even when the time period is a few days. Id. at 4 (citing Bush, 2008 WL 867941 at *5-6). Furthermore, the ALJ need not explain his use of chronological age. Id. Defendant concludes that since Plaintiff did not demonstrate additional adversities, the ALJ did not err in his decision. (Document No. 12, p.4).

It appears that since Plaintiff did not satisfy additional adversity requirements, the ALJ did not need to consider a non-mechanical use of the grids. Bush, 2008 WL 867941 at *5-6. The undersigned finds that the ALJ did not err in his consideration of the grids.

**B.    Evaluation of treating specialist's opinion and medical evidence**

Next, Plaintiff argues that the ALJ improperly evaluated the treating specialist's opinion and the medical evidence regarding the functionally limiting effects of Plaintiff's right ankle impairment. (Document No. 10, pp.6-9). Plaintiff contends that the regulations require an ALJ to carefully weigh the opinions of the medical sources on file by considering the length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, and supportability, consistency, and specialization. Id. at 6-7 (citing 20 C.F.R. 404.1527(c)). Plaintiff further contends that the regulations give a treating source's opinion "controlling weight" if it is well-supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." Id. at 7 (citing 20 C.F.R. 404.1527(c)(2)). Plaintiff argues that the ALJ should have given the opinions of the treating specialist, Dr. Stover, controlling weight, because Dr. Stover was a specialist in podiatry who treated Plaintiff regularly for two years, and Dr. Stover's opinions were consistent with other doctors who treated Plaintiff. (Document No. 10, p.7).

8

In response, Defendant argues that Dr. Stover's limitation finding for Plaintiff was inconsistent with his own treatment records for Plaintiff. (Document No. 12, pp.5-8). Essentially, Dr. Stover's limitation finding dated November 27, 2012, was too restrictive given the nature of the treatment record. Id. For example, Dr. Stover noted in his limitation finding that Plaintiff could only stand two hours of an eight-hour work day, but in the treatment record, Dr. Stover noted, for example, that NSAID use alleviated Plaintiff's symptoms, right ankle and foot strength was normal, and alternative treatments, symptom management, and bracing were discussed with the patient. Id. at 7-8. Thus, Defendant concludes that the ALJ could not give Dr. Stover's opinions controlling weight pursuant to 20 C.F.R.1527(c)(2) because Dr. Stover's own findings were inconsistent. Id.

The undersigned finds that this issue presents a close call. The ALJ was required to explain why a medical opinion was not adopted, and the ALJ did so. (Tr. 20-21). See SSR 96-8p at *7[5]. Specifically, the ALJ also explained that he chose to give Dr. Stover's opinion little weight. (Tr. 20-21).

> The undersigned notes Dr. Stover's limitations are entirely too restrictive and not consistent with his examinations which essentially showed minimal findings as noted above. Moreover, the course of treatment pursued by the doctor had not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported.

(Tr. 21).

Based on two observations in particular, however, the undersigned is concerned that the ultimate decision of the Commissioner here was not supported by substantial evidence. First, as previously noted, the ALJ determined that Plaintiff suffers severe impairments of osteoarthritis of

---

[5] Social Security Ruling ("SSR") 96-8p, "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims" (1996).

9

the right ankle and obesity. (Tr. 16). The ALJ specifically recognized that Plaintiff is 6' tall, with a weight ranging up to 299.8 pounds. (Tr. 19). And, the ALJ opined that

> Obesity may have an adverse impact upon co-existing impairments. . . . Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from osteoarthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis for an eight-hour day, . . . .

(Tr. 19). As discussed in greater detail below, the ALJ also acknowledged that Dr. Stover had recommended the use of a cane. (Tr. 18). Despite recognizing the adverse impact of coexisting impairments, with little, if any, explanation, the ALJ determined that Plaintiff was capable of performing a full range of light work activity, which can include "a good deal of standing and walking."[6] (Tr. 17); 20 C.F.R. § 404.1567 (b).

The undersigned further observes that in discounting Dr. Stover's opinions, the ALJ seemed to be swayed by an understanding that Plaintiff's symptoms were "relieved by OTC medicines (Ibuprofen)" and that after July 14, 2013, Plaintiff did not return "for treatment of his right ankle pain." (Tr. 18, 20). Contrary to the ALJ's findings, the record before the Court reflects that Plaintiff did return for further treatment, and that he continued to have difficulty with pain.

Specifically, the record shows that Plaintiff saw Dr. Stover on October 21, 2013 regarding right ankle pain, and Dr. Stover reported that Plaintiff "had not found anything to help him yet with his pain." (Tr. 444). Plaintiff also visited Dr. Stover on January 22, 2014. (Tr. 445). Dr. Stover then reported again that nothing was helping Plaintiff's pain and Dr. Stover "suggested staying out of work for at least another 6 months." (Tr. 448). Another visit on April 23, 2014 resulted in almost identical findings and Dr. Stover opined that he did not feel Plaintiff "would be

---

[6] The full range of light work "requires standing or walking, off and on, for a total of approximately **6 hours of an 8-hour workday.**" (SSR 83-10) (emphasis added).

able to return to his previous job as standing, lifting, carrying objects will only exacerbate his problem." (Tr. 452).

Even if the aforementioned evidence was not before the ALJ, it was considered by the Appeals Council which determined that it did not provide a basis for changing the ALJ's decision. (Tr. 2, 5). As discussed below, the undersigned finds good cause to remand this matter for further consideration based on Plaintiff's alleged need for a cane. That issue is intertwined with this one regarding the proper weight to afford Dr. Stover's opinions; therefore, the undersigned will recommend that this issue also be reconsidered below.

**C.    Determination of medical necessity of Claimant's cane usage**

Finally, Plaintiff argues that the ALJ erred by not considering the medical necessity of Plaintiff's cane in his RFC determination that Plaintiff was capable of a full range of light work. Plaintiff asserts that Dr. Stover prescribed use of a cane in January 2013, and that Plaintiff testified about his cane use at the ALJ hearing. (Tr. 37-39, 374). Plaintiff further asserts that the use of a cane "can substantially erode the occupational base." (Document No. 10, p.10). Because the use of a cane was supported by clinical evidence, it should have been considered in the RFC, especially given that an RFC determination of light work requires an individual to walk and/or stand for six hours out of an eight-hour work day. (Document No. 13, pp.2-3) (citing SSR 96-8p; <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015)).

Defendant argues that since the cane was a recommendation rather than an order from Dr. Stover, and Dr. Stover failed to note the necessity of the cane in his limitation finding dated November 23, 2013, the ALJ did not err by failing to weigh cane use in his opinion. (Document No. 12, pp.9-10). Defendant notes instead that Dr. Stover actually instructed the plaintiff to wear a brace and consider alternative treatments and symptom management. <u>Id.</u>

11

The undersigned is persuaded that the ALJ failed to adequately address claimant's cane use in his RFC determination, in light of the Fourth Circuit's recent decision in Mascio. In Mascio, the Court explained that SSR 96-8p requires that the RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulation. Mascio, 780 F.3d at 636 (citing SSR 96-8p at *5). Functions include physical abilities such as standing and walking, and these functions must be used to determine RFC and the subsequent exertional level of work (in this case a determination of light). Id. (citing SSR 96-8p at *5-6).[7]

The ALJ should have factored in the Plaintiff's cane usage in his function-by-function analysis and the subsequent determination of light work. The record provides at least two evidentiary sources to this end: (1) Plaintiff's testimony at the October 10, 2013 ALJ hearing (Tr. 37-38); and (2) Dr. Stover's recommendation in his treatment records dated January 14, 2013 (Tr. 374-75). The transcript of the hearing reads:

> Q How long have you used a cane?
> A I've had it for about six months now.
> Q And how often do you use the cane?
> A I use it to – you know, mainly for, you know, getting in and out of chairs, you know, things like that, places where, you know –
> uneven surfaces, you know, where – you know –
> Q Okay.
> A -- there might be a problem.
> Q So if you're walking with the cane, do you have the cane in your right hand or your left hand?
> A It's in the right hand.
> Q Okay. So if you're walking with your cane and therefore you're carrying anything you need to carry with your left hand, what's the maximum you can comfortably pick up and carry with your left hand while you're walking with the cane?

---

[7] It is important to note, however, that the Fourth Circuit in its Mascio decision declined to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Scruggs v. Colvin, 2015 WL 2250890 at *4 (W.D.N.C. May 12, 2015).

> A With the left hand? Two, three pounds, something like that, I guess.
> Q Okay. How long can you stand at one time comfortably?
> A Comfortably, 10 minutes, something like that maybe.
> Q How – and would that be with the cane you could stand comfortably 10 minutes, or is that without the cane?
> A Well, with the cane. The cane does – cane does help, yes.
> Q So with the cane, how long can you stand at one time comfortably?
> A About 10 or – 10 or 15, you know.
> Q Okay, with the cane, okay. And how do you start to feel after 10 or 15 minutes? What happens?
> A Well, it's a continual hurt, but it begins to, you know, elevate the – you know, the pain, the hurt, and all that.
> Q And to be clear, we're talking pain in the ankle?
> A Yes.

(Tr. 37-38).

Though the ALJ noted in his opinion that he gave Dr. Stover's opinion "little weight," the ALJ should have explained why this evidence of cane usage was not included in a function analysis and subsequent RFC determination of light work, a determination in which a claimant is required to do "a good deal of standing and walking." 20 C.F.R. § 404.1567(b). Furthermore, the use of a hand-held assistive device may reasonably "impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. § 404, Subpt. P, App. 1, p.5. Thus, it is possible that the ALJ overlooked a limitation or restriction—the use of a cane—that could narrow the range and type of work Plaintiff may perform.

Moreover, "[SSR 96-8p] explains that the residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." Mascio, 780 F.3d at 636. If an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the

record, remand may be appropriate. Scruggs v. Colvin, 2015 WL 2250890 at *4 (W.D.N.C. May 12, 2015) (citing Mascio, 780 F.3d at 636).

In Mascio, the Fourth Circuit concluded that remand was appropriate because the ALJ determined that the claimant could perform certain functions, but said nothing about Mascio's ability to perform them for a full workday, despite conflicting evidence in the record on that point. Scruggs, 2015 WL 2250890 at *4 (paraphrasing Mascio, 780 F.3d at 637). This Court applied the Mascio standard in Scruggs and found that an explanation of Plaintiff's limitations (in that case mental limitations) and her ability to perform work-related functions for a full work day was necessary because "the court [was] left to guess as to how the ALJ concluded that Plaintiff could perform relevant functions in light of her [] limitations." Scruggs, 2015 WL 2250890 at *5. Thus, the Court found that substantial evidence did not support the ALJ's decision and remand was appropriate. Id.

The Court also is "left to guess" in this case. It is unclear how the ALJ concluded that Plaintiff could perform a good deal of standing and walking for a full workday. The ALJ should have included analysis regarding the specialist's recommendation of a cane and the Plaintiff's own testimony of cane use for at least six months.

In addition, the undersigned observes that the ALJ did not question the vocational expert during the hearing to determine the kind of jobs Plaintiff could perform and whether those jobs existed in significant numbers in the national economy. Furthermore, no vocational expert analysis was included in the ALJ's decision. As a matter of law, the ALJ is not required to render the services of a vocational expert. 20 C.F.R. § 404.1566(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in

which they can be used, or there is a similar complex issue, we may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist"). The ALJ may show the kinds of jobs claimant may perform using the medical-vocational guidelines. Harrell v. Bowen, 862 F.2d 471, 478 (5th Cir. 1988). It might have been helpful in this case, however, if the ALJ had questioned the vocational expert at the hearing and identified the kinds of jobs Plaintiff actually could perform in the national economy. After all, the Commissioner has the burden of proof at Step 5 of the disability determination process.

Based on the foregoing, the undersigned recommends that this matter be remanded for further consideration of Plaintiff's use of a cane and the impact that it has on his RFC.

## IV. CONCLUSION

Although Defendant may ultimately be correct that there are jobs in the national economy that Plaintiff can perform, the undersigned is not persuaded that the ALJ's decision is supported by substantial evidence. The undersigned finds that the ALJ's decision lacks "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence does not support the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be vacated.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion for Judgment on the Pleadings" (Document No. 9) be **DENIED**; Defendant's "Motion for Summary Judgment" (Document No. 11) be **DENIED**; and the Commissioner's determination be **VACATED** and this matter be **REMANDED** for a new hearing and further consideration.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: July 3, 2015

_____
David C. Keesler
United States Magistrate Judge